CLINCHFIELD COAL CORPORATION v. STEINMAN.

CLINCHFIELD COAL CO. v. SAME.

(Circuit Court of Appeals, Fourth Circuit. May 6, 1915.)

Nos. 1266, 1267.

1. ACKNOWLEDGMENT ⬤═▷36—EVIDENCE ⬤═▷83—CONTENTS OF CERTIFICATE—STATUTORY PROVISIONS.

Code Va. 1887, § 2500, authorizing the clerk of court to take in his office acknowledgments of deeds, does not require that the acknowledgment shall recite that it was taken in the clerk's office, and where an acknowledgment does not affirmatively show that fact, it will be presumed that the clerk did his duty and took the acknowledgment in his office.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 181, 182, 184–198, 221–223; Dec. Dig. ⬤═▷36; Evidence, Cent. Dig. § 105; Dec. Dig. ⬤═▷83.]

2. ACKNOWLEDGMENT ⬤═▷56—CONTENTS OF CERTIFICATE—IMPEACHMENT—EVIDENCE.

An acknowledgment taken by a clerk of court, as authorized by Code Va. 1887, § 2500, but not affirmatively showing that it was taken by him

in his office, cannot be impeached by his testimony that he sometimes took acknowledgments out of his office.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 301, 302, 315; Dec. Dig. ⊚⟹56.]

3. **EJECTMENT** ⊚⟹95—COMMON SOURCE OF TITLE—EVIDENCE—LEGAL AND EQUITABLE TITLE.

In ejectment, plaintiff showed a legal title under a deed executed by P. in 1874, and showed that subsequent thereto P. made a contract of sale to S. who assigned it to R., before P. purchased the land at a judicial sale in 1878. R. entered under P., and obtained a conveyance pursuant to the directions of P. Defendant claimed under R. *Held*, that since P. was estopped, in equity and in ejectment, under Code Va. § 2741, from setting up title against R. or his grantee, and since R. claimed an equitable title from P. by virtue of the contract of sale, there was a showing by plaintiff that he and defendant claimed under a common source, which may rest, not only on a legal, but on an equitable, title, and plaintiff, showing a prior legal title from the common source, was entitled to recover.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 280–295; Dec. Dig. ⊚⟹95.]

4. **EVIDENCE** ⊚⟹158—BEST EVIDENCE—PLEADING.

Under Code Va. § 2741, providing that, where there is a writing evidencing a sale, the vendor may not recover in a legal action from the purchaser land sold, the existence of a writing may be proved by the best evidence available, and may be established by pleadings of the parties in a court of record, and by reference in the record to a contract as a document filed in the court.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 472, 473, 474½–504, 506–526; Dec. Dig. ⊚⟹158.]

5. **EJECTMENT** ⊚⟹25—TITLE—EVIDENCE FOR DEFENDANT.

In ejectment, defendant may not, to defeat the action, show title in another, independent of the common source of title, without connecting himself with the independent title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 99–106; Dec. Dig. ⊚⟹25.]

6. **EJECTMENT** ⊚⟹50—PARTIES IN INTEREST.

Where, in ejectment, defendant, a corporation, entered and was working the land under conveyances to it, and not under any lease from another entirely separate corporation, the latter corporation had no interest in the litigation, and its petition to be made a party defendant was properly refused.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 139, 145; Dec. Dig. ⊚⟹50.]

In Error to the District Court of the United States for the Western District of Virginia, at Big Stone Gap; Henry Clay McDowell, Judge.

Action by A. J. Steinman against the Clinchfield Coal Corporation, in which the Clinchfield Coal Company petitioned to be made a party. There was a judgment for plaintiff against defendant, and a denial of the petition of the Clinchfield Coal Company, and it and defendant separately bring error. Affirmed.

W. H. Rouse, of Clintwood, Va., and E. M. Fulton, of Wise, Va. (H. G. Morison, of Johnson City, Tenn., on the brief), for plaintiffs in error.

R. T. Irvine, of Big Stone Gap, Va. (J. F. Bullitt, of Big Stone Gap, Va., J. H. Steinman, of Lancaster, Pa., and A. C. Anderson, of Wise, Va., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. In this action of ejectment, brought by A. J. Steinman against the Clinchfield Coal Corporation for the coal, iron ore, and other minerals and fire clay on a tract of land of 100 acres, the District Judge directed a verdict for the plaintiff on the ground that the parties claimed title from a common source and that the plaintiff had shown the older conveyance. The questions are somewhat different as to the two parcels known as the "Barrett Tract" and the "Redwine Tract," which together make up the land described in the declaration.

The plaintiff, Steinman, introduced as his claim of title covering both tracts: (1) Deed from Jeremiah Powers to Wm. A. Powers, dated December 29, 1869. (2) Deeds from Wm. A. Powers to J. D. Price and A. J. Steinman, December 24, 1874, and from Price to Steinman of his interest, October 5, 1875. To show a common source of title the plaintiff undertook to trace the defendant's title to the Barrett tract back to Wm. A. Powers by introducing: (1) A contract from Wm. A. Powers to O. Barrett for the sale of the mineral rights, dated August 23, 1887; (2) deeds from Barrett through intermediate grantees to the Clinchfield Coal Corporation. The Redwine tract was embraced in the deed from Jeremiah Powers to Wm. A. Powers of December 29, 1869. But as to this tract the claim of a common source depends on the record in a chancery suit brought by Jack Carter and C. D. Carter against Wm. A. Powers and the heirs of Dale Carter, from which these facts appear: Dale Carter claimed the entire tract of 350 acres embracing the Redwine tract now in dispute, and Wm. A. Powers purchased it from him on December 10, 1878, for $175. The purpose of the suit was to require Powers to pay the purchase money, and to have title made to him by the court because of the disability of some of the heirs of Carter. At a sale made under the order of the court in this proceeding Powers purchased. This sale was not complied with for some time in consequence, it seems, of a dispute between Powers and R. B. Redwine; one of the claims of Redwine being that Powers, while in possession of the land, had before the equity proceedings were instituted sold to him the 50 acres now in dispute and received from him the purchase money. This dispute was finally settled by an agreement under which, by order of the court, a deed was made by the commissioner to Redwine for the tract of 50 acres now in dispute. The commissioner's deed, dated April 14, 1896, purported to convey the right, title, and interest "which the heirs of Dale Carter" have in and to the land, without specifically referring to the interest of Wm. A. Powers. In this statement the effort has been made to eliminate the many details which do not affect the points at issue.

[1, 2] Objection was made to the introduction of the deed from W. A. Powers to J. D. Price and A. J. Steinman, that the acknowledg-

ment did not affirmatively show that it was taken by the clerk in his office, as required by section 2500 of the Code of 1887. The statute does not require that the acknowledgment should contain the statement that it was taken in the clerk's office, and the presumption is that the officer did his duty and took it in his office. Hassler's Lessee v. King, 9 Grat. (Va.) 115; Peyton v. Carr's Ex'r, 85 Va. 456, 7 S. E. 848. Testimony of the clerk that he sometimes took acknowledgments out of his office was clearly inadmissible. Property rights should not be imperiled by the mere possibility that the titles were not executed as required by law. Besides, in Virginia an officer is not allowed to impeach his own certificate. Hockman v. McClanahan, 87 Va. 39, 12 S. E. 230.

[3] The most serious point and that most earnestly pressed is that the plaintiff failed to show that the defendant derived title to the Redwine tract from Wm. A. Powers as a common source, because the equity proceedings above recited show only an equitable title in Wm. A. Powers, and that Redwine, through whom defendant derived title, got his legal title, not through Powers, but directly from the heirs of Dale Carter, since the commissioner's deed conveyed only their interest to him. Looking at the facts before us, there can be no doubt that the substance of the matter was that Redwine entered under Powers and acquired the title which the defendant derived from him by virtue of a written instrument and the payment of the purchase money before the equity suit was instituted, and that in that suit the commissioner's deed was made to him in pursuance of a contract by Powers, the purchaser at the judicial sale, that the conveyance should be so made. It is clear, therefore, that the defendant's claim from Redwine rests on Redwine's contracts with Powers and his assignor, Salyer, by force of which the title was made to him. At least one of these contracts was in writing, executed by Powers to Salyer, and by him assigned to Redwine, before the purchase from Dale Carter by Powers. Both contracts were expressed and put into effect by the court in a cause to which Redwine, defendant's grantor, was a party and under which he derived title, and to which Powers was also a party actively participating in the proceedings leading up to the execution of the deed to Redwine. Under these conditions there can be no doubt that Powers would be estopped in equity from setting up title against Redwine or his grantees, and also estopped in the legal action of ejectment under section 2741 of the Virginia Code. Nor can it be doubted that Redwine claimed an equitable title from Powers by virtue of the contract of sale made by Powers to Salyer, and by him assigned to Redwine, before Powers purchased from Carter.

It seems evident, therefore, that the plaintiff has shown a common source, unless the law requires that the common source must rest on a legal and not an equitable title. In Marback v. Holmes, 105 Va. 178, 52 S. E. 828, the rule of common source was applied where it was shown by the record of a suit to which the defendant was a party that he had set up the equitable claim of specific performance against his father, from whom the plaintiff derived title. The defendant, however, relies upon the later case of Hurley v. Charles, 110 Va. 27, 65

S. E. 468, as overruling the earlier case, and holding that the rule of common source does not apply where the defendant claims under an equitable title. We do not think the decision bears that construction. The main fact in the case was that the testimony relied on to prove the common source was altogether parol. The legal conclusion was that parol evidence alone was not sufficient to show the common source, because the Virginia statute requires a writing, and excludes parol testimony as proof of such an equitable title as would defeat an action by a vendor or one holding the legal title under him. This we venture to think is the plain limitation of the decision. Nothing short of the clearest language would warrant this court in concluding that the Virginia court intended to overrule its former decisions and establish a new rule inconsistent with precedent and reason. The rule contended for by the defendant would mean that, if A. bought from B., he could not recover from C., who had subsequently entered under a contract to purchase the land from B., without tracing B.'s title back to the state.

[4] In the present case, as we have pointed out, the derivation of the defendant's title from the common source was not shown by parol, but by a written contract set up by Redwine and carried out by the decrees of a court of record to which both Redwine and Powers were parties. Section 2741 of the Virginia Code, providing that "where there is a writing" evidencing the sale, etc., the vendor cannot recover in a legal action from the vendee land sold to him, does not admit of the construction that the writing must in all cases be produced. The existence of the writing may be proved by the best evidence available; and in this case the written contract to sell was so established by the pleadings of the parties in a court of record, and by the reference in the record to the contract as a document filed in the court. The case of Davis v. Teays, 3 Grat. (Va.) 283, holding that the writing itself must be produced, construed the statute when it required of the vendee for his protection that he should "have plain written evidence." The amendment to the statute giving the vendee protection "where there is a writing," etc., does not require the actual having of the writing. The point was not involved in Hurley v. Charles, supra, for in that case there was no evidence of any kind of a writing.

[5] The defendant next insists that, even if the conclusions above stated be correct, it should have been allowed, nevertheless, to prove that the Clinchfield Coal Company, a separate corporation, held a perfect independent title traced from the state. In support of this position it was contended, first, that in an action of ejectment the defendant may show title in another independent of the common source without connecting itself with such independent title. There are authorities supporting this position, but we think it is opposed to the weight of reason and precedent and that it has been so decided in Virginia. Obviously such a rule would greatly impair the doctrine of common source, which has been promotive of justice and the stability of land titles. Without review of the many authorities, it seems sufficient to cite Bolling v. Teel, 76 Va. 487, Robertson v. Pickrell, 109 U. S. 608, 3 Sup. Ct. 407, 27 L. Ed. 1049, and Cooke v. Avery, 147 U. S. 375,

13 Sup. Ct. 340, 37 L. Ed. 209. The reasons for the contrary rule are stated with force in the note to Rice v. St. Louis, etc., Ry. Co., 47 Am. St. Rep. 72, but the authority above cited is controlling in this forum.

[6] The defendant failed to connect itself with the title of the Clinchfield Coal Company. The evidence on this point is that there is a very good understanding between the two corporations, but that they are entirely separate, and that the defendant corporation entered and was working the lands under conveyances to it, and not under any lease, either verbal or written, from the Clinchfield Coal Company. On the same reasoning the District Court properly refused the petition of the Clinchfield Coal Company to be made a party defendant. This litigation can in no wise affect the issue of title between the plaintiff and the Clinchfield Coal Company, claiming under a separate title.

Affirmed.